IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01574-PAB-SBP

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

CELL>POINT, LLC,
GREG COLIP,
TERRY COLIP,
CELL THERANOSTICS, LTD., and
CELL THERANOSTICS, INC.,[1]

    Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment Against Defendants Cell>Point, LLC, Greg Colip, and Terry Colip [Docket No. 239].

Plaintiff United States Securities and Exchange Commission ("SEC") filed its motion for partial summary judgment on July 21, 2023. Docket No. 239. Defendants Cell>Point, LLC, Greg Colip, and Terry Colip (collectively, "the defendant") filed a response on August 30, 2023, Docket No. 252, which was stricken by the Court for failure to comply with the Court's practice standards and Local Rules. Docket No. 255.

---

[1] Throughout the period relevant to this litigation, defendants Cell Theranostics, LTD. and Cell Theranostics, Inc. were wholly-owned subsidiaries of Cell>Point, LLC. Docket No. 152 at 5–6, ¶¶ 17, 18.

Defendants filed an amended response on September 8, 2023.[2]  Docket No. 256.  The SEC filed a reply on September 22, 2023.  Docket No. 258.  The SEC seeks summary judgment against defendants on its first and fifth claims for relief.  Docket No. 239 at 4.  The SEC alleges violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5.  Docket No. 140 at 74, ¶¶ 285–87.  The SEC also alleges violations of § 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), namely § 17(a)(2) and Rule 10b-5(b).  *Id.* at 78, ¶¶ 297–99.

### I.  BACKGROUND

#### A.  Procedural History

The procedural background of this case has been stated at Docket Nos. 93, 138, and 195.  It will only be repeated here to the extent necessary to resolve the present motion.

#### B.  Undisputed Facts[3]

Cell>Point is a privately held radiopharmaceutical company, headquartered in Centennial, Colorado, that purports to be developing diagnostic and therapeutic

---

[2] Defendant Greg Colip is a licensed attorney and filed responses on behalf of himself, Terry Colip, and Cell>Point, LLC.  *See* Docket No. 252 at 54; Docket No. 256 at 21.

[3] The following facts are undisputed unless otherwise indicated.  The Court struck defendants' first response for failures to comply with the Court's practice standards.  Docket No. 255 (citing Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.).  Federal Rule of Civil Procedure 56(c)(1)(A) requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by: . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Local Rule 56.1 requires the inclusion of a section of undisputed facts in motions for summary judgment.  D.C.COLO.LCivR 56.1.  The Court's practice standards provide that "[a]ny party opposing the motion for summary judgment shall, in a section of the brief required by Rule 56.1(a) of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled

products.  Docket No. 239 at 5, ¶¶ 1–2.  Cell>Point is a pre-revenue company, and it has never had revenue since its founding in 2001.[4]  *Id.* at 6, ¶ 3.  From January 2016 through at least February 2021 (the "relevant period"), Cell>Point offered and sold notes to investors.[5]  *Id.* at 7, ¶ 9.  During the relevant period, Cell>Point offered and sold LLC membership interests ("units") in Cell>Point to investors.  *Id.*, ¶ 10.  The sale of these notes and units was the primary means of financing Cell>Point's operations.  *Id.*, ¶ 11.

---

'Response to Statement of Undisputed Material Facts,' admit or deny the asserted material facts set forth by the movant."  Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  The Court's practice standards further require that "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."  *Id.* (emphasis omitted).  The practice standards explain that "[t]he sole purpose of these procedures is to establish facts and determine which of them are in dispute.  Legal argument is not permitted here and should be reserved for separate portions of the briefs."  *Id.*, § III.F.3.b.vii (emphasis omitted).  If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3); Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix.  Defendants fail to properly support any of their factual allegations.  They provide no specific citations to materials in the record that support their denials of fact.  The Court, therefore, deems admitted those facts defendants have not properly denied.  Furthermore, in their response to the statement of undisputed material facts, defendants make extraneous factual assertions, without proper support, and include legal argument.  Docket No. 256 at 2–11, ¶¶ 1–52.  The Court will not consider these factual assertions or legal arguments.
[4] Defendants dispute the claim that Cell>Point never had revenue since its founding.  Docket No. 256 at 3, ¶ 3.  However, they provide no support for their assertion that Cell>Point has received revenue from licensees HYUN IMC, Hanmi Pharmaceutical, and United Equity Partners, Inc.  *id.*  The Court therefore will deem as admitted that Cell>Point has never had revenue.
[5] The SEC does not define what constitutes a "note."  However, the Court has already determined that the "notes" sold to investors constituted a security.  Docket No. 93 at 13; *see also* 15 U.S.C. § 77c; *Reves v. Ernst & Young*, 494 U.S. 56, 67 (1990) (an instrument denominated a "note" is presumed to be a "security").

Since 2001, the company has raised at least $56 million from over 500 investors, including at least $10 million from over 150 investors during the relevant period. *Id.*

Cell>Point's founders, Greg Colip, Terry Colip, and Jerry Bryant, have been the company's managing members since its founding in 2001. *Id.* at 6, ¶ 6. Greg Colip is a manager of Cell>Point and holds the title of CEO.[6] *Id.*, ¶ 7. Terry Colip is also a manager and serves as the company's CFO. *Id.*, ¶ 8. During the relevant period, Terry Colip was the primary contact for individuals or entities interested in investing in Cell>Point, and he communicated with these parties by e-mail, telephone, and during events. *Id.* at 8, ¶ 15. Most of the time, Terry Colip met potential investors in person and provided a package that included a Private Placement Memorandum ("PPM"), an investor deck,[7] and other materials.[8] *Id.*, ¶ 16. Terry Colip ensured that every investor

---

[6] Defendants confirm that Greg Colip is the CEO, but dispute that he has served as Cell>Point's CEO since 2001. Docket No. 256 at 3–4, ¶ 7. Rather defendants claim, without citation, that CEO is a nominal title that was created to facilitate business networking and is unconnected to Greg Colip's decision-making authority. *Id.* Because this denial is unsupported, the Court will deem this fact admitted.

[7] The SEC does not define the term "investor deck." The Court notes that "pitch decks" or "investor decks" are generally "promotional PowerPoint slideshows that use both pictures and words to explain a particular company to prospective investors." *Peters v. Frontiere*, 2023 WL 5237436, at *3 n.4 (D.N.M. Aug. 15, 2023); *see also* Richard Harroch, *A Guild to Investor Pitch Decks for Startup Fundraising*, Forbes (June 20, 2020), https://www.forbes.com/sites/allbusiness/2020/06/20/guide-to-investor-pitch-decks-for-startup-fundraising/ (a "pitch deck typically consists of 15–20 slides in a PowerPoint presentation and is intended to showcase the company's products, technology, and team to the investors").

[8] Defendants object in part because they claim that Terry Colip provided prospective investors with an investor deck only half of the time. Docket No. 256 at 4, ¶ 16. The defendants do not cite any evidence in support of their objection, and therefore the Court deems this fact to be admitted.

received a PPM before investing.  *Id.*, ¶ 19.  Terry Colip and Greg Colip were each drafters of the PPMs.[9]  *Id.*, ¶ 18.

Nearly all PPMs from November 1, 2016 to June 1, 2020 stated that "capital and contributions from the founders and passive investors have exceeded $[amounts ranging from $83.1 million to $91 million] with $[amounts ranging from $51 million to $64.1 million] used for improving and clinically evaluating [Oncardia]."[10]  *Id.* at 10, ¶ 29.  Each PPM from January 16, 2016 to April 2, 2019 stated under the section titled "Management Compensation" that "the [founders] have contributed approximately $32.1 million in cash and units to cover clinical trials."  *Id.* at 11, ¶ 30.  Each PPM from June 1, 2019 to June 1, 2020 stated under "Management Compensation" that "the [founders] have contributed approximately $32.1 million to the Company booked as loans to cover clinical trials."  *Id.*, ¶ 31.  The October 21, 2020 PPM stated under "Management Compensation" that "the [founders] have contributed approximately $38.9 million in cash and units to the Company booked as loans."  *Id.*, ¶ 32.

The January 2019 investor deck stated that "$90.2 million (US) has been contributed and raised to date from Founding Partners [and other investors]. . . . $63.1 million has been invested in our lead agent Oncardia;" that "$90.2 million (Provided by Founding Partners, Oncologists, Radiologists, Cardiologists (including pension funds),

---

[9] Defendants purport to clarify this fact, but provide no support for their clarification. Docket No. 256 at 5, ¶ 18.  The Court therefore deems this fact admitted and will not consider the defendants' clarification.

[10] In its statement of undisputed facts, the SEC does not identify the diagnostic and therapeutic products that Cell>Point is purportedly developing or that the SEC refers to as "Oncardia."  The Court notes that the complaint states that Oncardia is a pharmaceutical product purportedly under development by Cell>Point.  Docket No. 140 at 2, ¶ 3; Docket No. 153 at 1–2, ¶ 3.

5

strategic investors, [and other investors]," and that "Total Contributions by Founding Partners – $38 million."  *Id.*, ¶ 33.  The March 2019 and May 2019 investor decks stated that "Total Contributions by Founding Partners - $38 million."  *Id.*, ¶ 34.  The September 2019 and October 2019 investor decks stated that "Capital Raised to Date: $90.1 Million."[11]  *Id.*, ¶ 35.  Terry Colip uploaded to Vimeo.com a 23-minute video showing a November 2019 Investor Deck (with Terry Colip's narration) soliciting investments and showing the following slide:



*Id.* at 10, ¶ 27.  The March 2020 investor deck stated that "Capital Raised to Date: $104.2 Million;" and that "Contributions by Founders: $37.9 million."  *Id.* at 11, ¶ 36.

---

[11] Defendants admit this fact, but add an explanation about various matters.  Docket No. 256 at 6, ¶ 35.  They provide no citation for their explanations.  The Court will not consider defendants' unsupported factual assertions.

The May 2020 investor deck stated "Capital Raised to Date: $104.2 Million." *Id.*, ¶ 37. Each quarterly report for Cell>Point, from the first quarter of 2016 through the second quarter of 2019, stated: "Contributions to date from founding and passive members have exceeded" amounts ranging from $83.4 million to $94 million. *Id.* at 12, ¶ 38.

Cell>Point hired the firm Eide Bailly, LLP to audit the company's finances for the years 2017 through 2020. *Id.*, ¶ 42. As of December 31, 2020, Cell>Point had raised approximately $55,738,420 from the sale of equity to investors. *Id.*, ¶ 40. By that same time, Cell>Point had raised approximately $1.3 million in cash by issuing debt in the form of notes payable. *Id.*, ¶ 41. Cell>Point's auditor confirmed that, to his knowledge, Cell>Point had raised no money apart from these sales of equity and debt, which totaled approximately $57 million.[12] *Id.*, ¶ 43. From the period beginning in May 2001, the founding members' contributions (cash and value of units contributed to the company) to Cell>Point were $8,225,787.63.[13] Docket No. 256 at 7, ¶ 44; Docket No. 258 at 7–8.

---

[12] The defendants deny this fact, but cite nothing in support of their denial. Docket No. 256 at 7, ¶ 43. Defendants elsewhere admit the accuracy of the audit and the fact that the company raised approximately $57 million through the sale of equity units and the issuance of debt. *Id.*, ¶¶ 40, 41, 43. The Court deems this fact to be admitted. Defendants also assert, without citation, that the audit did not reflect additional contributions made by Philips Medical Systems and uncompensated work performed by the founders. *Id.* They provide no support for these assertions and the Court will not consider them.

[13] Although the SEC alleges that founders contributed $7,865,827.80, Docket No. 239 at 13, ¶ 44, a number the defendants dispute, defendants dispute that the value of the founders' contributions was $8,225,787.63. Docket No. 256 at 7, ¶ 44. In its motion, the SEC indicates that, for purposes of the partial summary judgment motion, it will accept as true the value of the contributions made to the company by the founders to be $8,225,787.63. Docket No. 258 at 7–8. As such, the Court finds that it is an undisputed fact for purposes of this motion that the founding members' contributions to Cell>Point totaled $8,225,787.63.

During the relevant period, Cell>Point received approximately $10,203,477 in investor proceeds and $11,702,361 in total deposits.[14]  Docket No. 239 at 14, ¶ 51.  During that same period, Cell>Point made disbursements to the founders totaling $4,348,662.  *Id.*  As of December 31, 2020, the founders owed Cell>Point $11,074,376 for loans they had taken out from the company, with Terry Colip owing the company $5,065,221 and Greg Colip owing $2,942,337.[15]  *Id.*, ¶ 50.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

---

[14] Defendants admit the facts in paragraph 51 of the SEC's statement of undisputed facts.  Docket No. 256 at 9, ¶ 51.  The Court will not consider other factual representations in the defendants' response, as they are unsupported by any citation to the record.

[15] Defendants do not dispute the amounts loaned by the company to the founders, Docket No. 256 at 8, ¶ 50, but provide an explanation of the nature of these loans that is not supported by citations to the evidence.  The Court will not consider defendants' unsupported assertions.

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (citations and alterations omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

III.  **ANALYSIS**

   A. **Elements of the § 10(b) and § 17(a)(2) Claims**

In order to show a violation of § 10(b) of the Exchange Act, "the SEC must prove that [defendants] made: (1) a misrepresentation or omission (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, and (5) by means of interstate commerce." *SEC v. Smart* (*"Smart II"*), 678 F.3d 850, 856 (10th Cir. 2012) (citation, quotation, and brackets omitted). The requirements under § 17(a)(2) of the Securities Act are similar; the primary "difference between § 17(a) and § 10(b) lies in the

9

element of scienter." *Id.* at 857.  "Section 10(b) . . . require[s] the SEC to establish at least recklessness, whereas negligence is sufficient for § 17(a)(2)."  *Id.* (citing *SEC v. Wolfson*, 539 F.3d 1249, 1256–57 (10th Cir. 2008); *C.E. Carlson, Inc. v. SEC,* 859 F.2d 1429, 1435 (10th Cir. 1988)).  Additionally, because § 17(a)(2) declares it unlawful "to obtain money or property by means of any untrue statement of material fact," *Smart II*, 678 F.3d at 853 n.3, the SEC must prove "a causal link between the violator's deceptive statements and receipt of money or property."  *SEC v. Mahabub*, 343 F. Supp. 3d 1022, 1043 (D. Colo. 2018).

### B. Misrepresentations in the PPMs and Investor Decks

The SEC alleges that defendants made repeated misrepresentations to investors regarding the value of the capital raised by Cell>Point and the value of the investments made by Terry and Greg Colip in Cell>Point.  Docket No. 239 at 16.  Defendants repeatedly told investors through the PPMs and investor decks that the founders had contributed over $30 million in "cash and units" to Cell>Point.  Docket No. 239 at 11, ¶¶ 30–33, 35, 37.  For example, each PPM from January 16, 2016 to April 2, 2019 stated that the founders had contributed approximately $32.1 million in cash and units to cover clinical trials.  *Id.* at 11, ¶ 30.  Each PPM from June 1, 2019 to June 1, 2020 stated that the founders had contributed approximately $32.1 million to the company "booked as loans to cover clinical trials."  *Id.*, ¶ 31.  The October 21, 2020 PPM approximated the value of these contributions to be $38.9 million.  *Id.*, ¶ 31.  The investor decks for January 2019, March 2019, May 2019, and March 2020 all report the contributions made by the founders to be approximately $38 million.  *Id.*, ¶¶ 33–36.  Defendants added this $30 million figure to the approximately $57 million raised from

10

investors to represent to potential investors that Cell>Point had raised between $83.1 and $104.2 million in investment.[16]  *Id.* at 10–11, ¶¶ 29, 33, 35–37.  This approximately $100 million in total investment appeared in nearly all PPMs from November 1, 2016 to June 1, 2020, as well as in the investor decks for January 2019, September 2019, October 2019, March 2020, and May 2020.  *Id.*, ¶¶ 33, 35–37.  Terry Colip personally provided these PPMs and investor decks to prospective investors, *id.* at 8, ¶ 19, and Terry Colip and Greg Colip were each drafters of the PPMs.  *Id.*, ¶ 18.  However, despite telling investors that the founders had contributed over $30 million in cash and units to Cell>Point, it is an undisputed fact that the actual value of cash and contributions made by the founders does not exceed $8,225,787.63.[17]  Docket No. 256 at 7, ¶ 44; Docket No. 258 at 7–8.

---

[16] The fact that Cell>Point used the value of cash and units contributed by the founders to calculate the total value of the contributions made to company is demonstrated by a pie-chart incorporated in multiple investor decks.  Docket No. 239 at 10, 11, ¶¶ 27, 36, 37.  The pie-chart indicates that approximately thirty two percent of the $104.2 million in "Current Investor Mix" came from the "Founders."  *Id.* at 10, ¶ 27.

[17] The SEC's reply brief suggests that Cell>Point may have inflated the total contributions made by the founders by including the value of units that were "returned" to the company.  Docket No. 258 at 6 n.3.  Terry and Greg Colip allegedly "returned" some of the units the founders had given themselves at the founding of the company in order to resell these units to potential investors.  *Id.*; Docket No. 140 at 29, ¶¶ 103–04.  Terry and Greg Colip paid nothing for these units at the time of Cell>Point's founding and received nothing for their return.  Docket No. 140 at 29, ¶ 103.  Instead, Cell>Point allegedly promised to pay Terry and Greg Colip the market value of these units when the company was taken public or sold to a private buyer.  *Id.*, ¶ 104.  In their answer, defendants admit to the existence of such an arrangement.  *See* Docket No. 153 at 24, ¶ 104.  However, the Court need not review the SEC's theory as to how defendants arrived at the values they presented to potential investors.  Nor will the Court consider the explanation provided by defendants in their response to the statement of undisputed material facts regarding representations made in the September 2019, October 2019, March 2020, and May 2020 investor decks.  *Id.* at 6 – 7, ¶¶ 35, 36.  These explanations are unsupported by citations to the record and cannot demonstrate there is a disputed material fact that would preclude summary judgment.  Rather, the undisputed facts show that defendants represented to investors that the founders contributed over $30

11

Defendants repeatedly represented to prospective investors that the founders contributed over $30 million of capital to Cell>Point, when the actual value of the founders' cash and contributions was $8 million. Defendants have not shown any issue of disputed fact that would explain the discrepancy between what they represented to investors and what the founders actually contributed. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (in response to a summary judgment motion, "unsupported conclusory allegations do not create a genuine issue of fact.") (citation omitted). The Court finds that there is no dispute that defendants' statements concerning the capital contributions of the founders in the PPMs and investor decks were misrepresentations. *See* Docket No. 239 at 11, ¶¶ 30–33, 35–37. The Court also finds that defendants' statements to prospective investors in the PPMs and investor decks that represented that the company had raised capital contributions ranging from $83 to $104 million were misrepresentations, based, as they were, on misrepresentations about the founders' contributions. *See id.* at 10–11, ¶¶ 29, 33, 35–37.

### C. Materiality

"A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *GenAudio Inc.*, 32 F.4th at 921 (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)). To determine materiality, a court must assess the inferences a reasonable investor would draw from a given set of facts and the significance of those inferences. *Employees' Ret. Sys. of*

---

million in cash and units to the company and the actual value of these contributions was $8,225,787.63.

*Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1168 (10th Cir. 2018) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988)).  Here, the defendants claimed to prospective investors that the founders made tens of millions of dollars more in capital investment in Cell>Point than the founders in fact had made.

  A reasonable investor would draw two inferences from these misrepresentations.  First, an investor would reasonably conclude that Cell>Point had more capital to use in the development of its pharmaceutical products.  Defendants acknowledge "biotechnology is a capital-intensive business."  Docket No. 256 at 19.  Defendants estimate that the cost of developing a new drug and gaining regulatory approval to be $2.6 billion.  *Id.*  Given the capital-intensive nature of drug development, it would be material to an investor whether Cell>Point had tens of millions of dollars less in capital.

  Second, a reasonable investor would draw an incorrect inference about the financial stake Terry and Greg Colip had in the success of Cell>Point.  It is an undisputed fact that the value of the founders' contributions to the company is approximately $8 million.  Docket No. 256 at 7, ¶ 44; Docket No. 258 at 7–8.  However, defendants admit that, as of December 31, 2020, Terry and Greg Colip owed the company $5,065,221 and $2,942,377, respectively.  Docket No. 239 at 14, ¶ 50.  These are significantly different circumstances than founders who have put tens of millions of dollars of their own capital into the company and who stand to lose their investment if the company fails.  The personal financial stake the founders had in Cell>Point would be material to a reasonable investor.  *See SEC v. Jankovic*, 2017 WL 1067788, at *11–12 (S.D.N.Y. Mar. 21, 2017) ("Reasonable minds could not differ as to whether the misstatements [regarding the equity stake of the managing director] were material.  The

misstatements legitimized [the company]" and "would have been significant to a reasonable investor considering an investment.").[18]

### D. Scienter

Section 10(b) "require[s] the SEC to establish [a scienter of] at least recklessness, whereas negligence is sufficient for § 17(a)(2)." *Smart II*, 678 F.3d at 856 (citing *Wolfson*, 539 F.3d at 1256–57). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200–01 (10th Cir. 2015) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). "[W]illful or reckless behavior satisfies the scienter requirement." *Edward J. Mawod & Co. v. SEC*, 591 F.2d 588, 596 (10th Cir. 1979). The Tenth Circuit has defined recklessness in the securities context as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *GenAudio Inc.*, 32 F.4th at 923 (citing *City of Philadelphia v. Fleming Cos.*, *Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001)). Recklessness occurs "where the defendant [acts] with reckless indifference []to a . . . set of facts." *Edward J. Mawod & Co.*, 591 F.2d at 596. If the SEC shows that the defendants acted recklessly for purposes of its § 10(b) claim, the SEC has also shown negligence sufficient for its § 17(a)(2) claim. *GenAudio Inc.*, 32 F.4th at 932 ("Thus, because we already have

---

[18] It is undisputed that defendants made similar misrepresentations in Cell>Point's quarterly reports. Docket No. 239 at 9, ¶¶ 23–26. The SEC argues that the failure to disclose in investment materials, including the quarterly reports, millions of dollars of loans from Cell>Point to the founders was a material omission. *Id.* at 16–17. Because the Court has determined that defendants' misrepresentations in the PPMs and investor decks were material, the Court declines to consider other theories of liability.

determined that [the defendant] was at least reckless . . . his mental state necessarily was sufficient for the imposition of § 17(a)(2) liability.").

The scienter of a company's senior management "may be attributed to the [company] itself . . . when those senior officials were acting within the scope of their apparent authority." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003). Terry Colip is the CFO of Cell>Point, and Greg Colip is the CEO. Docket No. 239 at 6, ¶¶ 7, 8. Both are managers. *Id.* Both took an active part in drafting the materials presented to prospective investors and in raising investment in the company. *Id.* at 8, 9, ¶¶ 18, 23. There is no evidence of any other persons making these types of decisions for Cell>Point during the relevant period. As such, the scienter of Terry and Greg Colip can be attributed to Cell>Point directly.

Defendants argue that the SEC cannot prove scienter because the defendants sincerely believed that the figures they presented investors in the investment materials accurately reflected "the real value in of what has been contributed to the Company." Docket No. 256 at 17. However, "good faith belief is not a 'get out of jail free card.' It will not insulate the defendants from liability if it is the result of reckless conduct." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 193 (3d Cir. 2000). The defendants must have a reasonable basis in fact for their beliefs and "d[o] not have license under the securities laws to make material representations to investors that ha[ve] no foothold in reality." *GenAudio Inc.*, 32 F.4th at 931.

The undisputed facts support an inference by a reasonable jury that the defendants acted willfully or, at a minimum, acted recklessly when presenting inaccurate numbers regarding the capital contributions of the founders to prospective

15

investors. Terry and Greg Colip are managers of Cell>Point. Docket No. 239 at 6, ¶¶ 7, 8. As managers, they are aware of the company's finances and know the value of capital contributions made to the company. This is especially true for a pre-revenue venture because the company's only source of funding is through capital contributions. *Id.* at 6, ¶ 3. Furthermore, Terry and Greg Colip have personal knowledge of the amount of money they have individually contributed to the company. *Id.* at 13, ¶¶ 48, 49. Terry and Greg Colip have reported the founders' contributions were approximately $8 million. *Id.*, ¶ 44. Terry and Greg Colip were personally responsible for the drafting of the investment materials. *Id.* at 8, 9, ¶¶ 18, 23. These investment materials were sent to prospective investors in the hopes of raising more capital for the company through the sale of equity units – the company's primary, if not only, source of funding. In these materials, defendants repeatedly stated the value of the founders' contributions was tens of millions of dollars higher than they are admitted to be. *Id.* at 11, ¶¶ 30–33, 35–37. Defendants also repeatedly overstated the total value of capital contribution by tens of millions of dollars. *Id.* at 10–11, ¶¶ 29, 33, 35–37.

On these facts, a reasonable jury would conclude that Terry and Greg Colip's misrepresentations were made willfully or recklessly, rather than by mistake or inadvertence. Whatever mathematical or accounting formulation defendants used to estimate the value of founder contributions to be $30 million, they knew the actual value was $8 million. Their false representations of the founders' contributions in the materials sent to current and prospective investors posed a significant "danger of misleading buyers or sellers that . . . is so obvious that [they] must have been aware of it." *GenAudio Inc.*, 32 F.4th at 923. The Court finds that defendants were at least

16

reckless in misrepresenting the value of the founders' contributions to the company and the total value of capital contributions to date, and that a reasonable jury could not find otherwise. As such, the SEC has proven the defendants acted with the requisite scienter necessary for summary judgment on both its § 10(b) and § 17(a)(2) claims.

### E.  Connection with the Purchase or Sale of Securities

The Court has already ruled that Cell>Point's equity units and notes are securities, such that statements made by Cell>Point during their sale constitute statements made in connection with the purchase or sale of securities. Docket No. 93 at 13. For the first time, defendants assert in their response brief that the notes sold are exempt from the definition of securities by § 3(a)(3) of the Securities Act because their maturity period was less than nine months. Docket No. 256 at 19; *see also* 15 U.S.C. § 77c. The Court need not reconsider whether the notes constitute securities as it remains undisputed that defendants' sale of equity units constituted the sale of securities. Therefore, the Court finds that the SEC has satisfied the element of its § 10(b) and § 17(a)(2) claims requiring the defendants to make misrepresentations in connection with the sale of securities. *Smart II*, 678 F.3d at 856.

### F.  Means of Interstate Commerce

Terry Colip used email and the telephone to communicate with investors, including sending and discussing investment materials with investors. Docket No. 239 at 8, ¶¶ 15, 17. No party contests that this fact satisfies the requirement that the statements made by the defendants were communicated by a means of interstate commerce. *See SEC v. Smart* ("*Smart I*"), 2011 WL 2297659, at *18 (D. Utah June 8, 2011) (ruling use of mails, the internet, and telephones was sufficient to establish the

17

element of interstate commerce); Docket No. 256 at 20.  As such, the Court finds that the SEC has satisfied the element of its § 10(b) and § 17(a)(2) claims requiring the defendants to use a means of interstate commerce.  *Smart II*, 678 F.3d at 856.

### G.  Causal Link

For summary judgment on its § 17(a)(2) claim, the SEC must show "a causal link between the violator's deceptive statements and receipt of money or property." *Mahabub*, 343 F. Supp. 3d at 1043.  The SEC contends that a causal link between the defendants' deceptive statements and the investment they received can be shown by the ubiquity of the misrepresentations.  Docket No. 239 at 24.  Defendants argue that the SEC is unable to prove a causal link between any deceptive statements and the receipt of investor funds because the defendants made no deceptive statements. Docket No. 256 at 20.  The Court has determined that defendants did make misrepresentations and, as such, defendants' argument fails.

The SEC has shown a causal link between the defendants' statements and the investments received during the relevant period.  Defendants misrepresented the value of either the total capital contributions made to the company or the value of the capital contributions made by the founders in every PPM and investor deck during the relevant period.  Docket No. 239 at 10–11, ¶¶ 29–33, 35–37.  Often Cell>Point made both misrepresentations in the same document.  *Id.* at 11, ¶¶ 33, 35–37.  The PPMs were sent to every prospective investor, *id.* at 8, ¶ 19, and investor decks were included most of the time.  *Id.* at 8, ¶ 16.  During the relevant period, Cell>Point received approximately $10,203,477 in investor proceeds, and $11,702,361 in total deposits.  *Id.* at 14, ¶ 51.  Given the consistency and pervasiveness of defendants'

misrepresentations, the centrality of these misrepresentations to the value of the company relied upon by investors, and the quantity of investment received during the relevant period, the SEC has shown a causal link between the defendants' deceptive statements and the investment Cell>Point received.  The Court finds that the SEC has satisfied the final element of its § 17(a)(2) claim.  *Mahabub*, 343 F. Supp. 3d at 1043.

## IV.   CONCLUSION

The SEC has shown that there are no genuine issues for trial on a material matter with respect to its first and fifth claims for relief.  The undisputed facts establish each of the elements required for the SEC to prevail on summary judgment for both its first claim for relief under § 10(b) of the Exchange Act and its fifth claim for relief under § 17(a)(2) of the Securities Act.

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion for Partial Summary Judgment Against Defendants Cell>Point, L.L.C., Greg Russel Colip, and Terry Allen Colip [Docket No. 239] as to plaintiffs first and fifth claims for relief is **GRANTED.**[19]

---

[19] Terry Colip has filed a notice with the Court that, on February 28, 2024, he filed for Chapter 11 bankruptcy, Case Number 24-100043.  Docket No. 285.  On March 6, 2024, the Court requested the parties to comment on the applicability of any stay to these proceedings under 11 U.S.C. § 362(a).  Docket No. 286.  Each party responded.  Docket Nos. 287, 289.  The filing of bankruptcy generally effectuates a stay in related proceedings in federal district court.  *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 595 (10th Cir. 1997) (citing 11 U.S.C. § 362(a)).  "At the same time, so as to avoid impeding the functioning of governmental entities when they act as creditors, the [Bankruptcy] Code contains a number of limited exceptions.  For instance, the automatic-stay requirement does not preclude 'governmental units' from enforcing their 'police and regulatory powers' in certain proceedings."  *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 391 (2023) (quoting 11 U.S.C. § 362(b)(4) (alterations omitted)).  "Where a governmental unit is suing a debtor to prevent or stop a

DATED March 15, 2024.

BY THE COURT:

_____
Philip A. Brimmer
Chief United States District Judge

---

violation constituting fraud . . . or attempting to fix damages for violation of such a law, the action or proceeding is *not* stayed under the automatic stay." *SEC v. Miller*, 808 F.3d 623, 631 (2d Cir. 2015) (alternations and citation omitted); *see also In re Yellow Cab*, 132 F.3d at 597.  "[I]t is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power."  *SEC v. Vaughn*, 2010 WL 11441819, at *2 (D.N.M. Nov. 16, 2010) (quoting *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000)).  As such, the Court finds that Terry Colip's filing for bankruptcy does not stay the proceedings in this case.  *Id.*