IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01574-PAB-SBP

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

CELL>POINT, LLC,
GREG COLIP,
TERRY COLIP,
CELL THERANOSTICS, LTD., and
CELL THERANOSTICS, INC.,[1]

     Defendants.

---

## ORDER

---

The matters before the Court are Plaintiff's Third Emergency Motion for an Order to Show Cause Why Defendants Should Not be Held in Civil Contempt and Motion for Reconsideration for an Asset Freeze [Docket No. 205], JBA Enterprise, LLC's Motion to Intervene and Objection to SEC's Motion for an Asset Freeze [Docket No. 219], and Defendant's Submission of Request by Advanced Chelation Technologies, Inc. for Consideration of Proposed Transaction Plan [Docket No. 269].  Plaintiff United States Securities and Exchange Commission (the "SEC") seeks an order holding defendants in contempt and sanctioning defendants for violations of the Court's Order from December

---

[1] Throughout the period relevant to this litigation, defendants Cell Theranostics, LTD. and Cell Theranostics, Inc. were wholly-owned subsidiaries of Cell>Point, LLC.  Docket No. 152 at 5–6, ¶¶ 17, 18.

28, 2022.  Docket No. 205 at 1.  Specifically, the SEC seeks an order freezing

defendants' assets or requiring that defendants obtain permission from the Court in

advance of any solicitation or receipt of money from investors or prospective investors.

*Id.* at 15.  In response to the SEC's motion, the Court ordered defendants to show

cause on why they should not be held in civil contempt.  Docket No. 206 at 2.  On May

16, 2023, JBA Enterprise, LLC ("JBA") filed a motion to intervene in this case to oppose

the SEC's motion for an asset freeze as it relates to them and their state court judgment

against the defendants.  Docket No. 219.  Defendants filed a request for the Court to

reconsider its imposition of civil sanctions against the defendants and to approve a

proposed business transaction on November 11, 2023.  Docket No. 269.  The SEC filed

a response to defendants' request, Docket No. 275, and defendants filed a reply.

Docket No. 278.  On December 29, 2023, Advanced Chelation Technologies, Inc.

("Chelation Technologies") filed a motion to intervene on behalf of previous investors in

Cell>Point to oppose the SEC's motion to reconsider an asset freeze and to support

defendants request to lift the Court's civil sanctions against defendants.  Docket No.

280.

## I. BACKGROUND

The procedural background of this case has been stated at Docket Nos. 93, 138,

and 195.  It will only be repeated here to the extent necessary to resolve the present

motion.

On June 10, 2021, the SEC filed this lawsuit against defendants Cell>Point, LLC

("Cell>Point"), Greg Colip, and Terry Colip (collectively "defendants"), bringing claims

against all defendants for fraud under Sections 10(b) and 20(a) of the "Exchange Act,"

15 U.S.C. § 78j(b), against the individual defendants for aiding and abetting violations of the Exchange Act, against all defendants for fraud in the offer or sale of securities under Section 17(a) of the "Securities Act," 15 U.S.C. § 77q(a), and against the individual defendants for aiding and abetting violations of the Securities Act.[2]   Docket No. 1 at 38–42, ¶¶ 156–70.   Defendant Greg Colip is the chief executive officer and a managing member of Cell>Point.   Docket No. 93 at 2–3.   Defendant Terry Colip is the chief financial officer, as well as a managing member of Cell>Point.   *Id.* at 2*.*

On February 14, 2022, the Court entered a preliminary injunction enjoining defendants from violating securities laws.   *Id*. at 19–22.   On July 13, 2022, the Court issued an order ("First Contempt Order") holding Greg Colip and Terry Colip in civil contempt of the Court's order dated February 14, 2022.   Docket No. 138 at 20.   As a remedial sanction, the Court ordered Terry Colip, Greg Colip, and Cell>Point to return $100,000 that they obtained from an investor in violation of the Court's order enjoining violations of securities law.   *Id.* at 19.   The Court further ordered that defendants inform anyone they asked for a loan in the future with copies of the Court's preliminary injunction order and of the order holding them in contempt.   *Id.* at 21.   The Court ordered defendants contempt purged on October 27, 2022.   Docket No. 166.

On December 28, 2022, the Court issued an order ("Second Contempt Order") holding defendants in contempt of the Court's First Contempt Order.   Docket No. 195 at 21.   The Court ordered the following:

---

[2] On July 18, 2022, the SEC filed an amended complaint naming Cell Theranostics, Inc. and Cell Theranostics, Ltd., subsidiaries of Cell>Point, as defendants.   *See* Docket No. 140.

Within ninety days of this order, defendants Terry Colip, Greg Colip, and Cell>Point shall pay into the Court registry the amounts they received in violation of the Court's orders from February 14, 2022 and July 13, 2022 in investments in Cell>Point from Corey Helm ($3,137), Eric Verploeg ($8,469), Jeff Johnson ($12,500), and Paul Elliott ($100,000), for a total of $124,106, and shall pay 10% annual interest running from the date of this order.  Given that the Court finds Greg and Terry Colip to be in contempt of the above-mentioned orders, they will be jointly and severally responsible for the compensatory sanction along with Cell>Point.

If defendants claim that they do not have the financial ability to pay the sanction when due, they must each provide an explanation for why he or Cell>Point cannot pay with supporting documentation from bank and financial records of Terry Colip, Greg Colip, and Cell>Point.

Additionally, as a coercive measure to ensure defendants obtain any funds necessary to pay the sanction without violating the Court's February 14, 2022 order, or this order, defendants shall provide paper copies or attach pdf copies of this order and the February 14 and July 13, 2022 orders of the Court (a) to any person who defendants ask to provide a capital call, loan, donation, or investment to Terry Colip, Greg Colip, Cell>Point, Cell Theranostics, Inc., or Cell Theranostics, Ltd. or (b) to any person defendants reasonably believe intends, is considering, or has been solicited by any defendant to provide a capital call, loan, donation, or investment to Terry Colip, Greg Colip, Cell>Point, Cell Theranostics, Inc., or Cell Theranostics, Ltd.  When defendants provide copies of the Court's orders, defendants shall also include the following text in a conspicuous manner in the communication containing the copies: **The Court in *SEC v. Cell>Point, LLC, et al.*, 21-cv-01574-PAB-KLM (D. Colo.), has ordered that the attached documents be supplied to any person who is considering an investment or providing money to Cell>Point, LLC, Cell Theranostics, Inc., or Cell Theranostics, Ltd.**

The requirement that Terry Colip, Greg Colip, and Cell>Point provide copies of the Court's orders and the disclosure notice above applies to all solicitations, made by any means, regardless of whether an investor or potential investor has previously been informed of this litigation. Defendants shall continue to provide copies to such investors, or would be investors, in this manner until the Court finds the defendants' contempt has been purged by paying the sanction.

*Id.* at 17–19.

Defendants did not make any payments towards their sanction by April 3, 2023,

4

the date the Court specified as the deadline to pay the sanction. *See id.* at 21. On April 3, 2023, defendants filed "Defendants' Response to the Court Order" stating that "Defendants are not able to pay the required proceeds as instructed by the Court as of this date" and requesting that the Court allow defendants until May 1, 2023 to pay their sanction. Docket No. 198 at 2.

On May 2, 2023, the SEC filed Plaintiff's Third Emergency Motion for an Order to Show Cause why Defendants Should not be Held in Civil Contempt and Motion for Reconsideration for an Asset Freeze requesting that the Court order defendants to show cause why they should not be held in contempt of the Court's Second Contempt Order and for an order freezing defendants' assets. Docket No. 205. On May 3, 2023, the Court ordered defendants to show cause on or before May 5, 2023 why defendants should not be held in civil contempt based on the allegations in the SEC's motion and set a hearing for May 10, 2023. Docket No. 206 at 1–2. Defendants did not file a response to the Court's order to show cause.

On May 5, 2023, defendants filed "Defendants' Second Response to Court Order" requesting a second extension of time to pay their court ordered sanction until May 21, 2023. Docket No. 207 at 4. Despite representations to the Court on December 4, 2023 that "The Sanctions Imposed on December 22, 2022 are Going to be Fully Paid," Docket No. 278 at 4, as of March 15, 2024, defendants have not paid any amount of their sanction.

## II. LEGAL STANDARD

"Civil contempt is an appropriate remedy for the enforcement of a judicial decree, but it is a severe one which should be used only when necessary to sustain the

authority of the court." *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir. 1970). "[I]n the civil contempt context, a plaintiff must prove liability by clear and convincing evidence." *FTC v. Kuykendall*, 371 F.3d 745, 756 (10th Cir. 2004). The court in *Kuykendall* explained that the movant "has the burden of proving, by clear and convincing evidence, (1) that a valid court order existed, (2) that the defendants had knowledge of the order, and (3) that the defendants disobeyed the order." *Id.* at 756–57 (citation and alteration marks omitted). "The contemnor's disobedience need not be willful to constitute civil contempt." *Bad Ass Coffee Co. of Hawaii v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000) (quotations omitted). However, defendants may assert a defense to a finding of contempt with a "showing by clear and convincing evidence that all reasonable steps were taken in good faith to ensure compliance with the court order and that there was substantial compliance, or relatedly by proving plainly and unmistakably defendants were unable to comply with the court order." *Id.* at 1256 n.8 (quotations omitted).

## III.  FINDINGS OF FACT

The Court held an evidentiary hearing on the SEC's motion on May 10, 2023.[3] Docket No. 214. At the hearing, the Court heard the testimony of Ned Minor, Terry Colip, and Greg Colip. *Id.* at 1–2. Based upon this testimony and upon the exhibits admitted, the Court makes the following findings of fact:

Terry Colip and Greg Colip were both aware of the Court's Second Contempt

---

[3] The exhibits referenced in this order were admitted at the hearing. *See* Docket No. 214.

Order as of the day it was issued, December 28, 2022.  Docket No. 195 at 23.

On April 17, 2023, Terry Colip sent a letter on behalf of Cell>Point to approximately sixty-five investors, including Ned Minor.  The letter Ned Minor received is labeled "INVOICE" and reads:

> First we apologize for the attached bill.  Cell>Point needs to raise capital for the 2021 and 2022 tax return, audit, and annual expenses.  Your portion of the expenses is $665.00.  Attached please find the self-addressed envelope to mail your check payable to Cell>Point, L.L.C.  Please email Terry Colip [] with any questions.

Ex. 5.  Rawah Capital, LLC and Jeff Smith received identical letters, except for the portion addressing the recipient.  Exs. 1, 3.  The letters do not reference this litigation or any of the Court's orders.  Exs. 1, 3, 5.

Terry Colip testified that he believed the letters complied with the Court's Second Contempt Order because he understood a capital call to mean a request for capital for general purposes and that, because the request in the letters specified that the funds were for tax returns, they were not capital calls, and copies of the Court's orders were not required to be included.  Greg Colip testified that he believed that the language on page 21 of the Court's order stating "it is . . . ORDERED that, until the Court finds that the contempt is purged, Terry Colip, Greg Colip, and Cell>Point shall not solicit any investments or loans without providing such would be investors or loan providers with copies of this order and the February 14 and July 13, 2022 orders of the Court" controlled what the defendants were ordered to do.  Docket No. 195 at 21.  He did not understand the portion of the order on page 18, which stated "defendants shall provide paper copies or attach pdf copies of this order and the February 14 and July 13, 2022 orders of the Court (a) to any person who defendants ask to provide a capital call, loan,

donation, or investment to [the defendants] or (b) to any person defendants reasonably believe intends, is considering, or has been solicited by any defendant to provide a capital call, loan, donation, or investment to" the defendants, to be a controlling part of the Courts order.  *Id.* at 18.  Greg Colip testified that he believed that, because the letters sent to investors were invoices, and not solicitations for investments or loans, the letters complied with the Court's order, despite the language concerning any "capital call, loan, donation, or investment" on page 18.  Greg Colip was aware Terry Colip was sending a letter to investors to get help paying Cell>Point's tax return, but he did not review the April 17, 2023 letter Terry Colip sent on behalf of Cell>Point.

## IV.  ANALYSIS

### A.  Civil Contempt

In order to find that defendants are in contempt of an order of the Court, the SEC must demonstrate "by clear and convincing evidence, (1) that a valid court order existed, (2) that the defendants had knowledge of the order, and (3) that the defendants disobeyed the order."  *Kuykendall*, 371 F.3d at 756–57 (citation and alteration marks omitted).

#### 1.  December 28, 2022 Order

Defendants do not argue that the Court's order from December 28, 2022 is invalid or that they did not have knowledge of it.  Defendants did not directly argue they obeyed the Court's order.  Terry Colip testified that he did not disobey the order to his understanding and Greg Colip testified that he misunderstood the Court's order.

The Court does not find Terry Colip's testimony credible.  When the Court held defendants in contempt through October 27, 2022, the Court stated that, if defendants

were confused about the Court's orders, they could have asked for clarification.

Defendants did not ask for clarification after the Court's July 13, 2022 or December 28, 2022 orders.

The Court does not find Greg Colip's testimony credible. Greg Colip testified that he believes the only portion of the Court's order that defendants were bound by is the final section. Greg Colip testified that the defendants were entirely focused on complying with the final part of the Court's order. He testified that his own naivety might have led him not to read and consider the order as a whole and that while the letters were frames as invoices, they were essential requests for "help" that this might have fallen under the broader portion of the order. He testified that he misread or misinterpreted the order because he did not understand it to include anything other than loans and investments. However, Greg Colip is an attorney and is currently representing the defendants in this case. On December 28, 2022, the Court held the defendants in contempt for their failure to comply with the Court's first order prohibiting them from further violating securities law and requiring them to disclose the present litigation to any prospective investor. Docket No. 195 at 11–12. The order imposed obligations on the defendants, including on Greg Colip. *Id.* at 16–23. It is patently unbelievable that Greg Colip misinterpreted, as an attorney, the simple admonitions of the Court, including "defendants shall provide paper copies or attach pdf copies of this order . . . to any person who defendants ask to provide a capital call, loan, donation, or investment," and did not seek clarification if he had questions about what that language

meant.  *Id.* at 18.[4]

Terry Colip violated the Court's Second Contempt Order when he sent a letter to investors seeking to raise capital in April 2023.  Additionally, based on Greg Colip's testimony that he knew Terry Colip was raising funds and did not review the letter, despite serving as both the CEO of Cell>Point and counsel for the defendants, the Court finds Greg Colip liable for the violation as well.  *See United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) (quoting *Colonial Williamsburg Found. v. Kittinger Co.,* 792 F. Supp. 1397, 1406 (E.D. Va. 1992)) ("[A]n individual who is responsible for insuring that a corporation complies with a court order cannot escape liability merely by removing himself from the day-to-day operations of the corporation and washing his hands of responsibility.").  The Court finds Greg Colip, Terry Colip, and Cell>Point in

---

[4] The Court also notes that in a filing Greg Colip signed, defendants stated "[t]he Court's order of December 28, 2022 further requires that Defendants provide the Court with financial information as part of this request for allowing additional time" to pay the Court's sanction.  Docket No. 198 at 2.  The portion of the Court's order referred to by Greg Colip states, "[i]f defendants claim that they do not have the financial ability to pay the sanction when due, they must each provide an explanation for why he or Cell>Point cannot pay with supporting documentation from bank and financial records of Terry Colip, Greg Colip, and Cell>Point."  Docket No. 195 at 18.  This is on the same page as the portion of the order which Greg Colip testified he did not believe was controlling.  The "summary portion" of the order which Greg Colip testified he believed "controlled" what defendants had to do does not address steps to take if defendants could not pay their sanction by April 3, 2023.  *See id.* at 21–22.

contempt of the Court's December 28, 2022 order.[5]

### 2. *December 28, 2022 Sanction*

The Court's Second Contempt Order ordered that, "to purge the contempt, Terry Colip, Greg Colip, and Cell>Point, jointly and severally, shall pay $124,106.00, including 10% annual interest running from the date of this order, to the Court Registry, by April 3, 2023."  Docket No. 195 at 21.  The order also stated that, "[i]f defendants claim that they do not have the financial ability to pay the sanction when due, they must each provide an explanation for why he or Cell>Point cannot pay with supporting documentation from bank and financial records of Terry Colip, Greg Colip, and Cell>Point."  *Id.* at 18. Defendants have made no payments towards their contempt sanction, despite having over a year to do so.  Defendants have filed numerous financial disclosures with the Court.  Docket Nos. 198, 207, 227, 235, 253, 254, 265, 272, 279, 281, 284.  While some of these disclosures attempt to provide an explanation for defendants' failure to "secure funding" to pay their sanction and request the Court grant them an extension of time, *see*, *e.g.*, Docket No. 198, other disclosures simply provide various financial documents with no explanation as to why these documents demonstrate that the defendants are

---

[5] As discussed below, the Court concludes that finding Terry Colip in contempt of the Court's December 28, 2022 order does not violate the stay imposed on these proceedings under 11 U.S.C. § 362(a) by Terry Colip's filing for bankruptcy.  The SEC sought this contempt order to enforce its police and regulatory powers and not to enforce a money judgment, as no money judgment has been entered in this case.  *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 391 (2023) ("[T]he automatic-stay requirement does not preclude 'governmental units' from enforcing their 'police and regulatory powers' in certain proceedings.") (alternations omitted)).

unable to pay any portion of their sanction.  *See*, *e.g.*, Docket No. 284.  As part of the

most recent financial disclosure for the month of January 2024, defendants included a

Wells Fargo account in Greg Colip's name that appears to have been opened in August

2023.  Docket No. 284-3 at 3.  The account appears to have had a balance of nearly

$68,000 between September and October of 2023, and presently has a value of

approximately $43,000.  *Id*.  The January 2024 disclosure states only that "[a]ttached to

this filing are the bank statements of Defendants and the brokerage account statement

for Greg Colip.  Aside from the attached bank statements, there have been no changes

to the assets of Greg Colip and Terry Colip during the report period."  Docket No. 284.

Not only does this disclosure fail to claim that defendants are unable to pay the

sanction, but further demonstrates that that at least Greg Colip has available over

$40,000 in a brokerage account that could be used to pay at least part of the sanction.

As such, the Court finds Greg Colip, Terry Colip, and Cell>Point in contempt of the

Court's December 28, 2022 order for failure to pay the sanctions imposed by the Court.[6]

## B.  Request to Discharge Sanctions

On November 11, 2023, defendants filed a letter with the Court, Docket No. 269,

which the Court construed to be a motion to discharge contempt sanctions.  Docket No.

271.  The motion asks the Court to approve a business plan defendants assert will allow

Cell>Point to register on the Hong Kong Stock Exchange.  Docket No. 269 at 2.

---

[6] For substantially the same reasons as discussed above, the Court concludes that
finding Terry Colip in contempt of the Court's December 28, 2022 does not violate any
automatic stay imposed on these proceedings under 11 U.S.C. § 362(a).

Defendants state that:

> The purpose of this effort is to recapitalize the operations necessary to resume all business activities, and to provide a pathway for all of Cell>Point's current members to recover their investments and be able to decide for themselves whether they wish to continue as shareholders for future growth or to liquidate their investments.

*Id.*  However, defendants assert that, "[b]efore the plan can proceed, Cell>Point must discharge its liability to JBA Enterprises, LLC and the contempt sanction pending before this Court."  *Id.*  The SEC opposes the business transactions proposed in defendants' request because the plan "is based on a false premise, misrepresents or omits critical facts, would strip Cell>Point of whatever value remains in the company, contains the hallmarks of the earlier fraud, and would be undertaken with business partners whose credibility and good-faith even Defendants have called into disrepute."  Docket No. 275 at 9.  The SEC also presents evidence that, between August and October 2023, Terry and Greg Colip received tens of thousands of dollars, without making any payment towards their contempt sanctions.  *Id.* at 6–7.  While defendants have filed several financial disclosures with the Court, none of the disclosures explain why the defendants have not been able to make any payments towards their sanction.  Docket Nos. 198, 207, 227, 235, 253, 254, 265, 272, 279, 281, 284, 288.  Furthermore, defendants' February 2024 disclosure substantiates the SEC's allegations regarding the funds available to Terry and Greg Colip to pay their sanction.  The financial disclosure includes a Wells Fargo account in Greg Colip's name that appears to have been opened in August 2023, that had a balance of nearly $68,000 between September and October of 2023, and that presently has a value of approximately $40,000.  Docket No.

288-1 at 3.

As the Court order makes clear, "to purge the contempt, Terry Colip, Greg Colip, and Cell>Point, jointly and severally, shall pay $124,106.00 . . . ."  Docket No. 195 at 21. Each defendant is liable for the whole of the sanction, and defendants' repeated allegations that they are unable to secure funding from a third party to cover the cost of the sanction have no bearing on their individual obligation to pay the Court's sanction.

At no point in time have the defendants complied with the Court's previous orders or provided an adequate explanation for why they are unable to do so.  Given the defendants' repeated and continuing failure to comply with the Court's orders imposing sanctions, the Court declines to reconsider its imposition of sanctions.  Defendants' request is therefore denied.

### C.  Asset Freeze

The SEC requests that the Court enter an order freezing defendants' assets. Docket No. 205 at 12–13.  To obtain an asset freeze in connection with violations of the Securities Act, the SEC must show "either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws." *Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011) (quoting *SEC v. Byers*, 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009)).  The Court previously ruled the SEC has "proved that defendants have violated the Securities Act and Exchange Act."  Docket No. 93 at 17.  The Court, however, ruled that the SEC failed to demonstrate justification for an asset freeze because the SEC had not shown any assets of defendants that could be frozen.  *Id.* at 18–19.

A "pre-judgment asset freeze should not exceed the amount that the SEC could

ultimately recover on the merits." *SEC v. Friedland*, No. 18-cv-00529-MSK-MEH, 2018 WL 1193539, at *4 (D. Colo. Mar. 8, 2018).  The SEC must provide a reasonable approximation of any ill-gotten gains at which point defendants have the burden of disproving that the approximation was unreasonable.  *Id.* (citing *SEC v. Curshen*, 372 F. App'x. 872, 883 (10th Cir. 2010) (unpublished)).  The SEC posits the defendants have received $10,000,000 in ill-gotten gains.  Docket No. 217 at 2.  Under the Securities Act, a defendant may be ordered to pay a civil penalty in "the gross amount of pecuniary gain to such defendant as a result of the violation."  15 U.S.C. § 77t(d)(2)(C). Accordingly, the SEC requests an asset freeze of up to $20,000,000 to cover both the disgorgement and the civil penalty.  Docket No. 217 at 3.  The SEC claims all of defendants' assets should be frozen because the total of defendants' assets does not approach $20,000,000.  *Id.*  In response, defendants do not address this approximation, arguing only that "[a]t no time and under no circumstance has one dime of Cell>Point's money been used for anything but legitimate business expenditures."  Docket No. 222 at 3.

The Court finds it unnecessary to freeze the defendants' assets at this point.  The Court has granted the SEC's motion for partial summary judgment for its claims under § 10(b) of the Securities Exchange Act of 1934 and § 17(a)(2) of the Securities Act of 1933.  Docket No. 290.  In its motion for partial summary judgment, the SEC indicated that it "will, at the appropriate time, seek remedies arising from these violations including 'disgorgement of all ill-gotten gains' and 'civil penalties pursuant to Section 21(d) of the Securities Act and Section 20(d) of the Exchange Act.'"  Docket No. 239 at 5 n.1

(alterations omitted).

It is therefore appropriate to wait until the SEC files its remedies motion.  For the same reason, the Court declines the SEC's request that the Court require defendants to seek permission from the Court prior to any solicitation or acceptance of money from any investor or prospective investor.  Docket No. 205 at 15.

**D.  Motions to Intervene**

Finally, the Court addresses the motions to intervene filed by JBA and Chelation Technologies.  Docket Nos. 219, 280.  JBA filed its Motion to Intervene and Objection to SEC's Motion for an Asset Freeze on May 16, 2023.  Docket No. 219.  The motion requests that the Court exclude JBA and the Arapahoe County District Court from any order that freezes the assets of Terry Colip, Cell>Point, Cell Theranostics, Inc., and Cell Theranostics, LTD.  *Id.* at 6, ¶¶ 21–22.  Chelation Technologies filed its motion to intervene on December 29, 2023.  Docket No. 280.  The motion requests that the Court deny the SEC's request for an asset freeze as to Cell>Point so that previous investors in Cell>Point, now associated with Chelation Technologies, can pursue the business plan proposed by the defendants in their motion to discharge sanctions.  Docket No. 280 at 2, 7, ¶¶ 8, 33.

Federal Rule of Civil Procedure 24 governs the intervention of non-parties. Under Rule 24(a)(2), non-parties may intervene in a pending lawsuit as of right if: "(1) the application is timely; (2) the applicants claim an interest relating to the property or transaction which is the subject of the action; (3) the applicants' interest may as a practical matter be impaired or impeded; and (4) the applicants' interest is not adequately represented by existing parties."  *W. Energy Alliance v. Zinke*, 877 F.3d

16

1157, 1164 (10th Cir. 2017) (brackets omitted).  "Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Maynard v. Colo. Sup. Ct. Off. of Att'y Regul. Counsel*, No. 09-cv-02052-WYD–MT, 2010 WL 2775569, at *3 (D. Colo. July 14, 2010) (quoting *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984)).

If a non-party is not entitled to intervention as of right, it may seek permissive intervention under Federal Rule of Civil Procedure 24(b).  Permissive intervention is allowed if (1) the motion to intervene is timely and (2) the non-party "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  "The decision to grant or deny a motion for permissive intervention is wholly discretionary with the district court."  *Maynard*, 2010 WL 2775569, at *4 (internal quotations omitted) (quoting *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)).

In light of the Court's order granting the SEC's motion for partial summary judgment, the Court declining to implement an asset freeze at this time, and the forthcoming motion by the SEC seeking remedies arising from defendants' violations of securities law, the Court will deny JBA's and Chelation Technologies' motions to intervene without prejudice with leave to file amended motions after the SEC has filed its remedies motion.

**V.  CONCLUSION**

Accordingly, it is

**ORDERED** that Plaintiff's Third Emergency Motion for an Order to Show Cause Why Defendants Should Not Be Held in Civil Contempt and Motion for Reconsideration for an Asset Freeze [Docket No. 205] is **DENIED**.[7]    It is further

---

[7] Terry Colip has filed a notice with the Court that, on February 28, 2024, he filed for Chapter 11 bankruptcy, Case Number 24-100043.  Docket No. 285.  On March 6, 2024, the Court requested the parties to comment on the applicability of any stay to these proceedings under 11 U.S.C. § 362(a).  Docket No. 286.  Each party responded. Docket Nos. 287, 289.  The filing of bankruptcy generally effectuates a stay in related proceedings in federal district court.  *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 595 (10th Cir. 1997) (citing 11 U.S.C. § 362(a)).  "At the same time, so as to avoid impeding the functioning of governmental entities when they act as creditors, the [Bankruptcy] Code contains a number of limited exceptions.  For instance, the automatic-stay requirement does not preclude 'governmental units' from enforcing their 'police and regulatory powers' in certain proceedings."  *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 391 (2023) (quoting 11 U.S.C. § 362(b)(4) (alterations omitted)).  "Where a governmental unit is suing a debtor to prevent or stop a violation constituting fraud . . . or attempting to fix damages for violation of such a law, the action or proceeding is *not* stayed under the automatic stay."  *SEC v. Miller*, 808 F.3d 623, 631 (2d Cir. 2015) (citation omitted); *see also In re Yellow Cab*, 132 F.3d at 597.  "[I]t is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power."  *SEC v. Vaughn*, 2010 WL 11441819, at *2 (D.N.M. Nov. 16, 2010) (quoting *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000)).  As such, the Court finds that Terry Colip's filing for bankruptcy does not stay the proceedings in this case.  *Id.*  The Court further notes that the Court's previous contempt orders were issued prior to Terry Colip's filing for bankruptcy and that no defendant has paid the fine, thereby purging the contempt sanction.  *Cf. FTC v. Rensin*, 771 F. App'x 84, 86 (2d Cir. 2019) (unpublished) (finding that "the timing of the order's entry constitutes a crucial factor in our analysis" and therefore a contempt order after entry of a money judgment violated the bankruptcy stay) (citation omitted); *Miller*, 808 F.3d at 629 (upholding a prejudgment asset freeze as exempt from the bankruptcy stay).  The Court further notes that the SEC has represented to the Court that "in an abundance of caution," the SEC is not "currently seeking that Terry Colip pay any of the $124,106 (plus interest due) for contempt." Docket No. 289 at 4.

**ORDERED** that Defendant's Submission of Request by Advanced Chelation

Technologies, Inc. for Consideration of Proposed Transaction Plan [Docket No. 269] is

**DENIED**.  It is further

**ORDERED** that JBA Enterprise, LLC's Motion to Intervene and Objection to

SEC's Motion for an Asset Freeze [Docket No. 219] is **DENIED without prejudice**.  It is

further

**ORDERED** that the Motion to Intervene by Advanced Chelation Technologies,

Inc. [Docket No. 280] is **DENIED without prejudice**.  It is further

**ORDERED** that JBA Enterprise, LLC and Advanced Chelation Technologies, Inc.

may file amended motions to intervene within 10 days of the SEC filing its motion for

remedies.

DATED March 15, 2024.

BY THE COURT:

_____

Philip A. Brimmer
Chief United States District Judge