IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-1574-PAB-SBP

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

        v.

CELL>POINT, L.L.C.,
GREG RUSSELL COLIP, and
TERRY ALLEN COLIP,

    Defendants.

---

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION DEFENDANTS' MOTION FOR RECONSIDERATION [Dkt. No. 330]**

---

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully submits this Response in Opposition to Defendants Cell>Point, LLC ("Cell>Point"), Greg Colip, and Terry Colip's Motion for Reconsideration ("Motion") of the Court's February 28, 2025 Order (Dkt. No 325) and March 4, 2025 Amended Order (Dkt. No. 328) (collectively, the "Order on Remedies"). For the reasons set forth below, the Motion should be denied.

## RELEVANT BACKGROUND

On March 15, 2024, the Court granted Plaintiff's motion for partial summary judgment (Dkt. No. 239) as to the First and Fifth Claims in the Amended Complaint (Dkt. No. 140, at ¶¶ 285-287; 297-299) against Cell>Point, Greg Colip, and Terry Colip, which alleged violations of, *inter alia*, Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, and Section 17(a)(2) of the Securities Act. *See* Dkt. No. 290 ("PSJ Order"), at 19. On May 10, 2024, the SEC moved

for remedies and final judgment on the First and Fifth Claims, Dkt. No. 296, which Defendants opposed, Dkt. No. 303, and to which the SEC replied, Dkt. No. 310. On February 28, 2025, the Court issued an Order that, *inter alia*, granted in part and denied in part the SEC's Motion for Remedies and Final Judgment. *See* Dkt. No. 325, at 42-43. On March 4, 2025, the Court entered an Amended Order which superseded and modified certain calculations in the February 28 Order but contained the same essential relief. *See* Dkt. No. 328, at 41-43. As it concerns the two issues presented here—disgorgement by Greg Colip and Terry Colip and the officer and director bars against the Colips—the Order on Remedies required Greg Colip to disgorge $559,982.46, together with prejudgment interest thereon in the amount of $178,085.40, and Terry Colip to disgorge $2,211,096.30, together with prejudgment interest thereon in the amount of $737,597.39, and ordered that each be permanently barred from serving as officers or directors of public companies. *See id.* at 42.

On March 31, 2025, Defendants filed the instant Motion to argue, first, for the Court to reconsider the individual disgorgement calculations against the Colips, stating, in part, "the evidence attached to this Motion will show that the compensation paid to Greg Colip and part of the compensation received by Terry Colip was for legitimate work necessary to address issues and advance the company's business all in preparation to properly resume clinical studies and to put the investigational product compound on strong commercial footing." Dkt. No. 330 at 2. The putative evidence consists of 17 exhibits, which are summarized below:

(1a)　September 26, 2016 price quote from J-Star Research to Jerry Bryant at Cell>Point, which was unsigned;
(1b)　2016 email chain with the subject: "Re: RES: RES: ECDG Production & Registration in Brazil";
(1c)　September 24, 2016 Preliminary Progress Report for "99mTc-EC-DG Dose Optimization Study in Swine" by investigators at the University of Virginia;
(1d)　September 16, 2019 Chemistry Manufacturing and Controls (CMC) Gap Analysis prepared by Camargo Pharmaceutical Services, LLC;

2

(2) Undated "Preliminary studies of 99mTc-EC-DG SPECT/CT for evaluation of treatment response evaluation in head and neck cancer" by scientists at the University of Chicago;
(3) February 23, 2021 Patent No. 10,925,977 B2 (filed June 28, 2007);
(3b) October 27, 2020 Patent No. 10,814,013 B2 (filed July 31, 2012);
(3c) April 5, 2018 "Results for Labeling of EC-Glucosamine Kits with 99mTc" prepared by Ali Azhdarinia, Ph.D.;
(4) April 27, 2020 price quote from J-Star Research to Jerry Bryant at Cell>Point, which was unsigned;
(5) November 5, 2018 Agreement between TAP Advisors LLC and Cell>Point signed by Terry Colip;
(6a) April 24, 2016 Patent Technology and Sublicense Agreement between Texas Drilltech Development and Cell>Point;
(6b) December 6, 2019 Patent Technology and Sublicense Agreement between United Equity Partners, Inc. and Cell>Point;
(7) 2021 Document written in Chinese;
(8a) Jan 18, 2017 Joint Technology Sublicense agreement between Hyun IMC holdings, Co. Ltd., United Eastern Pharmaceutical, and Cell>Point;
(8b) November 22, 2017 Standstill Agreement between Beijing PKU Jinqui New Technology Co. Ltd. and Cell>Point, which was unsigned;
(8c) February 16, 2016 Letter to Ashish Sarkar of Zydus Cadila Healthcare Limited re: "Proposal," which was unsigned; and
(8d) August 19, 2016 email from Greg Colip to Shahe Bagerdjian re: "Cell>Point.

*See* Dkt. Nos. 330-1 through 330-17.

The Motion, second, seeks reconsideration of the Court's decision to "permanently and unconditionally prohibit Terry Colip and Greg Colip from acting as an officer or director of any publicly traded company." Dkt. No. 328, at 37-39; Dkt. No. 330, at 11-13.

## CONFERRAL

Pursuant to D.C.Colo.LCivR 7.1, Defendants did not confer with the Plaintiff before filing the Motion. The SEC opposes the Motion, as set forth herein.

## ARGUMENT

I. **The Motion Presents Neither New Evidence nor Intervening Legal Authority to Reconsider Any Prior Rulings.**

A. **Applicable Law**

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead,

3

the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Where, as here, the motion seeking reconsideration precedes final judgment, it "is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment. . . . In such a case, the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Vigil v. Colorado Dep't of Corr.*, No. 09-CV-01676-PAB-KLM, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008)). "[T]he basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error." *Id.*

### B. There is No Basis to Disturb the Individual Disgorgement Calculations.

The Motion does nothing more than rehash Defendants' arguments about Greg Colip's and Terry Colip's disgorgement that were already considered and rejected by the Court, and fails to identify any new evidence, intervening legal authority, or clear error that could provide a basis for reconsideration. Defendants' transparent attempt to re-argue their opposition to the SEC's motion for remedies under the guise of a "Motion for Reconsideration" should be rejected.

The Motion's principal effort is to unwind the entirety of the disgorgement, which the Motion seems to indicate should be $643,658, against Greg Colip (the actual disgorgement ordered was $559,982.46), and to reduce the same amount from a larger disgorgement amount imposed on Terry Colip. *See* Dkt. No. 330 at 7-11 ("For the purpose of this Motion, Terry Colip is not asking the Court to reconsider the disgorgement Order as it pertains to this amount"

[referring to amounts Terry Colip received in excess of $643,658]). The premise underlying Defendants' argument is that $643,658 was "normal compensation" that both Greg Colip and Terry Colip earned for performing "legitimate work" on behalf of Cell>Point. *Id.* at 7-11.

Defendants made the same arguments in their opposition to the SEC's motion for remedies. *See* Doc. 328 at 21 ("As to the proper amount that Greg Colip should disgorge, defendants assert that the 'entire amount of the money paid to Greg Colip during the Relevant Period was in the form of compensation,' which defendants state is $643,658"); *id*. at 24 ("Defendants next argue that, although the 'SEC correctly shows $2,541,490 that was distributed to Terry Colip during the Relevant Period,' Terry Colip should be allowed to keep $643,658 of these disbursements as compensation for his work."). The Court rejected Defendants' arguments, writing: "Although defendants appear to claim that the $643,658 paid to Greg Colip was compensation above and beyond the money he received as part of the company's payroll disbursements, they do not explain why Greg Colip received these additional payments, what work these payments were made for, and why this work was beyond the scope of the work for which Mr. Colip received payroll disbursements." Dkt. No. 328 at 22. The Motion's barren assertion that this was "compensation" drawn by the managing members, Dkt. No. 330 at 10, is hardly credible evidence of that fact, much less the type of compelling *new* evidence that would warrant the Court reconsidering a prior ruling. Moreover, the assertion that the managing members "drew the same compensation," *id.* is flatly contradicted by the Motion's acknowledgment two sentences later that Terry Colip actually withdrew substantially more money than Greg Colip (apparently to cover personal costs like "a steep increase in tuition") which plainly suggests these "compensation" figures were neither uniform nor tied to any Cell>Point-related metrics common across the managing members. And, the Court's other

5

concern about the absence of "documentary support substantiating the amount" remains unaddressed, as none of the newly appended exhibits have any bearing, nor shed any light, on the $643,658 figure presented by the Motion.

Indeed, every "new" document submitted with the Motion dates from 2016 to 2021 and was known to and within the possession of Defendants at the time they briefed the SEC's request for remedies in mid-2024. The Motion offers no explanation nor argument as to why the documents, to the extent they are salient (they are not), were not submitted or used during the initial briefing. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (describing grounds for reconsideration as including "new evidence previously unavailable"). Because all of the "new" evidence submitted with the Motion was available to Defendants prior to the merits briefing on remedies, the Court should reject Defendants' belated effort to use it now to re-argue their opposition to the motion for remedies.

Even considering the substance of the belatedly submitted materials, the documents appended to the Motion are, individually and collectively, irrelevant to the calculation of the Colips' disgorgement. The Motion totally fails to connect any 17 exhibits that were submitted to "the compensation paid to Greg Colip and part of the compensation received by Terry Colip," Dkt. No. 330 at 2, as the Motion portended. Aside from briefly summarizing what each document is, the Motion makes no attempt to explain how the Court should use any of the appended exhibits to revise its calculations of disgorgement for the Colips. Not one of the submitted exhibits appears to have any bearing on the calculation of ill-gotten gains by Greg Colip or Terry Colip; none of the submitted materials has, for example, anything to say about how, when, or why Greg Colip or Terry Colip received "compensation" payments, nor do they speak to the criteria that supported the disbursements previously identified by the SEC. For

example, none of the appended exhibits are payroll records, time sheets, or other evidence that could relate to the nature of the payments. Moreover, as the Court previously found in its Order on Remedies, the disbursements from Cell>Point's bank accounts to Terry Colip and Greg Colip were separate from entries for payroll made by Cell>Point, Dkt. No. 328 at 22-24, which neither Defendants' initial filing nor the new Motion has endeavored to explain.

Instead, the appended exhibits are a random smattering of vendor price quotes to Cell>Point (Exhibits 1a and 4), third parties' scientific articles or analyses (Exhibits 1c, 1d, 2, 3c), business agreements (Exhibits 5, 6a, 6b, 8a, and 8b), copies of patents (Exhibits 3, 3b), letters and emails often addressed to Jerry Bryant (Exhibit 1b), licensing plans for places in Oceania and South Asia in 2016 (Exhibits 8c and 8d), or an untranslated foreign language document (Exhibit 7). Again, not one of these documents addresses whether any of the payments at issue were *compensation*, Dkt. No. 328 at 25, or, even if they were, whether that compensation (separate from payroll) was reasonable or appropriate. *See id.*

Finally, the Motion does not attempt to identify any intervening legal authority concerning, or clear error in the calculation of, disgorgement. Defendants failed at the initial briefing stage to explain the propriety of the large dollar transfers to themselves, and they have again fallen well short in the instant Motion. The Court's disgorgement calculation should not be disturbed.

C. **The Officer and Director Bars Should Not Be Reconsidered.**

The Motion also argues that the officer and director bars against the Colips under Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), "seem[] an overly harsh penalty considering an unblemished career and the work performed to lead the company" by Greg Colip, Dkt. No. 330 at 11, and that that it "effectively [be] a death sentence" to Terry Colip by forcing

7

him to work outside his experience and profession, *id.* at 13. None of these arguments utilize any recognized basis for reconsideration. Rather than address any of the six factors analyzed by the Court in the Order on Remedies, Dkt. No. 328 at 37 (citing *SEC v. Wolfson*, 2006 WL 1214994, at *10 (D. Utah May 5, 2006)), the Motion again takes great liberties with settled facts (and three contempt rulings) to claim that Greg Colip "never noticed" some of the key lies in the PPMs used by Cell>Point, Dkt. No. 330, at 12, and that Terry Colip "did not recognize" what he was saying "could possibly be interpreted as materially misleading," *id.* at 12. There is no new evidence about what was in Greg Colip and Terry Colip's minds or about their intent; nor can it be called "new" evidence that the Colips disclaim responsibility for the false statements they made to their investors. *See, e.g.*, Dkt. No. 290 at 15 ("Defendants argue that the SEC cannot prove scienter because the defendants sincerely believed that the figures they presented investors in the investment materials accurately reflected "the real value in of what has been contributed to the Company."). In short, Greg Colip repeating his self-serving claims that he lacked scienter are contrary to the record, and his self-promoting clams of credibility and trustworthiness cannot be squared with his conduct at Cell>Point, his flagrant disregard of court orders, his failure to follow the Court's rules for even simple matters, and his continued refusal to repay the sanctions. Much of the same could be said for Terry Colip, including the contempt orders issued against him and his refusal to stop raising money from investors (during this litigation) in violation of the anti-fraud provisions of the federal securities laws and conditions placed on him by the Court. The Order on Remedies correctly imposed permanent officer and director bars, and that ruling should remain undisturbed.

## **CONCLUSION**

For all of these reasons, the Court should deny Defendants' Motion for Reconsideration.

Respectfully submitted,

*/s/ James P. McDonald*
Zachary T. Carlyle
James P. McDonald
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000