IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 21-cv-01574-PAB-SBP

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

> Plaintiff,

v.

CELL>POINT, LLC,
GREG COLIP, and
TERRY COLIP,

> Defendants.

---

### ORDER

---

This matter comes before the Court on Defendants' Motion to Correct the Record
and Prayor [sic] to Amend the Judgment to Reflect Recalculation of Damages in Light of
Corrections [Docket No. 333].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On June 10, 2021, the United States Securities and Exchange Commission
("SEC") filed this lawsuit against defendants Cell>Point, LLC ("Cell>Point"), Greg Colip,
and Terry Colip (collectively, "defendants"), bringing claims (1) against all defendants for
fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934
("Exchange Act"),15 U.S.C. § 78j(b), (2) against the individual defendants for aiding and
abetting violations of the Exchange Act, (3) against all defendants for fraud in the offer
or sale of securities under § 17(a) of the Securities Act of 1933 ("Securities Act"), 15
U.S.C. § 77q(a), and (4) against the individual defendants for aiding and abetting

violations of the Securities Act.  Docket No. 1 at 38–42, ¶¶ 156–70.  On July 21, 2023,

the SEC moved for summary judgment on its first and fifth claims against defendants,

namely, violations of § 10(b) of the Exchange Act and Rule 10b-5 (claim 1) and

violations of § 17(a)(2) of the Securities Act and Rule 10b-5(b) (claim 5).  Docket No.

239.  On March 15, 2024, the Court granted the SEC's motion for summary judgment

on claims one and five.  Docket No. 290.  On May 10, 2024, the SEC filed an

unopposed motion to amend the complaint to drop the remaining claims in this action,

Docket No. 300, which the Court granted.  Docket No. 328 at 6.

On May 10, 2024, the SEC filed a motion seeking remedies and final judgment

based on the Court's granting summary judgment on claims one and five.  Docket No.

296.  On February 27, 2025, the Court granted in part and denied in part the SEC's

motion for remedies.  Docket No. 325.  On March 4, 2025, the Court amended its order

to correct a clerical error.  Docket No. 328.  The Court ordered Terry Colip to disgorge

$2,211,096.30 in profits from defendants' fraud and to pay $737,597.39 in prejudgment

interest, as well as to pay a civil penalty of $1,270,745.  *Id.* at 42.  The Court ordered

Greg Colip to disgorge $559,982.46 in profits, to pay $178,085.40 in prejudgment

interest, and to pay a civil penalty of $321,829.  *Id.*

In their response to the motion for remedies, defendants argued that all of the

money Greg Colip received from Cell Point during the period of defendants' fraud was

compensation for work he performed as a member of Cell>Point and as its CFO.  *Id*. at

21.  Defendants maintained that Greg Colip received $643,658 in compensation, which

he was entitled to keep as part of a legitimate business expense.  *Id.*  This figure

2

matched the amount of money the SEC claimed was distributed out of Cell>Point bank accounts to Greg Colip for the same period.  *Id.* at 22.

In the Court's order on the SEC's motion for remedies, the Court noted that the SEC claimed that Cell>Point distributed $1,607,093 in payroll payments during the same period.  *Id.*  Seventy-five percent of these payments were made to the founding members of Cell>Point, namely, Greg Colip, Terry Colip, and Jerry Bryant.  *Id.* Defendants did not contest the fact that these payroll distributions were made.  The Court found that, although "defendants appear to claim that the $643,658 paid to Greg Colip was compensation above and beyond the money he received as part of the company's payroll disbursements, they do not explain why Greg Colip received these additional payments, what work these payments were made for, and why this work was beyond the scope of the work for which Mr. Colip received payroll disbursements."  *Id.* The Court further concluded that "Greg Colip's declaration, without any documentary support substantiating the amount he received as compensation and what the compensation was for, is insufficient to meet defendants' burden to produce concrete and credible evidence of the value of defendants' business expenses and of demonstrating that those expenses furthered a legitimate business purpose."  *Id.* (citation and quotation omitted).

Regarding Terry Colip, in their response to the motion for remedies, defendants admitted that the "SEC correctly shows $2,541,490 that was distributed to Terry Colip during the Relevant Period."  *Id.* at 24 (quoting Docket No. 303 at 17).  However, defendants maintained that Terry Colip should not be required to disgorge this entire sum.  *Id.* at 24–25.  Instead, they argued that Terry Colip, out of fairness, should be

allowed to keep the same amount of compensation as Greg Colip, $643,658.  *Id.*  The

Court rejected this argument, finding that "defendants' argument again ignores the

compensation Terry and Greg Colip were paid as a part of payroll disbursements" and

that "defendants provide no support for the proposition that [Terry Colip's] compensation

should be valued at $643,658."  *Id.* at 25.

The Court barred Terry Colip and Greg Colip from acting as officers or directors

of a publicly traded company in the future.  *Id.* at 42–43.  The Court found that "the

nature of Terry and Greg Colip's fraud, their roles in the fraud, their refusal to accept

responsibility, their refusal to comply with the Court's orders, and their refusal to pay

any portion of the contempt sanction[1] all demonstrate that Terry and Greg Colip are

likely to engage in further misconduct and that a director and officer bar is appropriate in

this case."  *Id.* at 38–39 (footnote added).

On March 31, 2025, defendants filed a motion asking the Court to reconsider,

among other things, the portion of the Court's March 4, 2025 order requiring Terry and

Greg Colip to disgorge their profits from the securities fraud.  Docket No. 330.

Defendants argued that "Greg Colip was compensated a total of $643,658" during the

defendants' fraud and that this compensation was "for legitimate work," attaching 17

documents in support of this contention.  *Id.* at 7; *see also* Docket No. 330-1 through

330-17.  On November 10, 2025, the Court denied the motion for reconsideration,

stating that it would not consider the documents because there was no indication the

---

[1] On December 28, 2022, the Court held defendants in civil contempt for failing to
alert potential investors of the proceedings in this case and ordered defendants to pay a
civil contempt sanction of $124,106, which sanction defendants have never paid.
Docket No. 195 at 21.

documents were not available to them at the time they filed their response to the SEC's

motion for remedies.  Docket No. 332 at 7.

On December 19, 2025, defendants filed a "Motion to Correct the Record and

Prayor [sic] to Amend the Judgment to Reflect Recalculation of Damages in Light of

Corrections," acknowledging that "the title of this Motion may be incorrect."  Docket No.

333 at 1.  Whether or not the title is incorrect, the Court has not yet entered final

judgment, so there is no judgment to amend.  Rather, defendants' motion is, in reality, a

second motion for reconsideration, asking the Court to "reconsider elements involved in

the court's calculation of damages."  *Id.* at 7.  On January 9, 2026, plaintiff filed a

response.  Docket No. 334.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for

reconsideration.  *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858,

861 (10th Cir. 1995).  Instead, motions for reconsideration fall within a court's plenary

power to revisit and amend interlocutory orders as justice requires.  *See Paramount*

*Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing

Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th

Cir. 1962).  In order to avoid the inefficiency which would attend the repeated re-

adjudication of interlocutory orders, judges in this district have imposed limits on their

broad discretion to revisit interlocutory orders.  *See, e.g., Montano v. Chao*, No. 07-cv-

00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule

60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v.*

*McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at

*1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the

duty-to-defend order).  Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  *See Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2019 WL 8275344, at *2 (D. Colo. Feb. 12, 2019); *cf. Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").

## III.  ANALYSIS

"Generally, disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.'"  *Kokesh v. SEC*, 581 U.S. 455, 458–59 (2017).  "Disgorgement need only be a reasonable approximation of profits causally connected to the violation."  *SEC v. GenAudio Inc.*, 32 F.4th 902, 945 n.22 (10th Cir. 2022).  Once the SEC has shown a reasonable approximation of the wrongful gain, "the burden shifts back to the defendant[s] to demonstrate that the disgorgement figure [is] not a reasonable approximation."  *Id.* (quoting *SEC v. Teo*, 746 F.3d 90, 105 (3d Cir. 2014) (internal quotations omitted); citing *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) ("The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. . . .  Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." (quotation, alteration, and citations omitted)).  The Supreme Court has held that "courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)."  *Liu v. SEC*, 591 U.S. 71, 91–92 (2020).

6

Defendants state that there is a "need to bring to the Court's attention a clear factual misunderstanding of exactly what was the correct compensation received by Greg Colip and Terry Colip during the Relevant Period." Docket No. 333 at 1-2. Specifically, defendants assert that "[t]he statement that Terry Collip received $2,965,716 and Greg Colip received $643,658 in compensation [from Cell>Point] is incorrect." *Id.* at 2. Rather, defendants assert that "Terry Colip received a total of $161,424.58 in compensation and Greg Colip received a total of $159,043 in compensation." *Id.* Defendants assert that the remaining "disbursements that Terry Colip and Greg Colip received from Cell>Point were only in respect to interest-bearing loans pursuant to a long-administered loan program." *Id.*

Defendants have twice raised the issue of Terry Colip's and Greg Colip's compensation. Docket No. 303 at 16-18; Docket No. 330 at 7-11. Defendants' current position directly contradicts the position previously taken by defendants, which argued that the money Terry Colip and Greg Colip received from Cell>Point was from compensation, not loans.[2] *See id.* Defendants do not base their new position on previously unavailable evidence. Instead, defendants submit their own tax documents, financial statements, and audit confirmations, without asserting that such documents were unavailable to them at the time they filed their response to the SEC's motion for remedies.[3] But, as the Court explained in its order on defendants' first motion for

---

[2] In fact, Greg Colip stated in a declaration made under penalty of perjury that he "drew a total of $643,658 in compensation" during the relevant period. Docket No. 303-9 at 1, ¶ 7.

[3] Notably, while this evidence tends to prove that a loan program existed, it does not establish the amount of loans disbursed to Terry Colip and Greg Colip. *See* Docket No. 333-1 through Docket No. 333-6.

reconsideration, "the evidence [to support a motion for reconsideration] must be new to the defendants, not the Court."[4]  Docket  No. 332 at 7 (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).  Thus, the Court finds that reconsideration of its past order is not warranted due to new evidence.

Defendants do not argue that reconsideration is warranted due to the emergence of new legal authority; in fact, defendants do not cite a single case in their motion.  *See generally* Docket No. 333.  Thus, the Court finds that reconsideration of its past order is not warranted due to new legal authority.

The final possible basis to grant a motion for reconsideration is if the Court's prior ruling was clearly in error.  But defendants raise their loan argument for the first time in the second motion for reconsideration, and the Court does not err by confining its ruling to the arguments raised and the evidence submitted by defendants in response to the motion for remedies.  *See Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 n.2 (10th Cir. 2001) ("A motion for reconsideration is not . . . an opportunity for the losing party to raise new arguments that could have been presented originally.").  And, in any event, the Court found in the March 4, 2025 order that defendants failed to produce "concrete and credible evidence" showing that Greg Colip and Terry Colip's disbursements from Cell>Point (then referred to by defendants as "compensation") represented business expenses that furthered a legitimate business purpose.  Docket No. 328 at 22-25.  But defendants do not explain in the second motion for

---

[4] Not all of defendants' submitted evidence is even new to the Court, as the financial statements attached to the motion as Exhibit 3 were previously submitted to the Court on September 11, 2023 as an attachment to defendants' opposition to the SEC's motion for summary judgment.  *Compare* Docket No. 333-3 *with* Docket No. 257.

reconsideration why their new assertion that the disbursements were "loans" constitutes "concrete and credible evidence" that the disbursements represented business expenses that furthered a legitimate business purpose. Therefore, the Court will deny the second motion for reconsideration.[5]

Plaintiff asserts that if the Court denies the second motion for reconsideration, final judgment will be ripe for entry. Docket No. 334 at 10 n.2. The Court agrees and will close the case.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Motion to Correct the Record and Prayor [sic] to Amend the Judgment to Reflect Recalculation of Damages in Light of Corrections [Docket No. 333] is **DENIED**. It is further

**ORDERED** that this case is closed.

DATED July 14, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[5] Defendants' motion also describes Greg Colip's purported contributions to Cell>Point, ostensibly in response to the Court's finding when ruling on defendants' first motion for reconsideration that defendants failed to connect Greg Colip's compensation to any business activities. Docket No. 333 at 5-7. The second motion for reconsideration, however, merely makes unsubstantiated assertions regarding Greg Colip's contributions. *Id.* Unsubstantiated assertions do not constitute "concrete and credible evidence" demonstrating the value of the business expenses and that the expenses furthered a legitimate business purpose. Docket No. 332 at 8 (citing *Sec. & Exch. Comm'n v. Miller*, 2024 WL 4534512, at *9 (D. Md. Oct. 21, 2024)). More importantly, defendants do not show that these assertions contain new information that was previously unavailable. Thus, this information, even if supported with evidence, also does not provide a basis for the Court to grant the motion.